**RHODES et ux. v. UNITED STATES.**
**Civil Action No. 1661.**

District Court, S. D. Texas,
Houston Division.

Feb. 6, 1946.

Wright Matthews, of Houston, Tex., for plaintiffs.

Brian S. Odem, U. S. Atty., and J. W. Cash, Asst. U. S. Atty., both of Houston, Tex., for defendant.

KENNERLY, District Judge.

Plaintiff E. V. Rhodes was for a number of years Receiver of the Texas Sugar Refining Corporation under appointment of the District Court of Galveston County, Texas (Tenth Judicial District), in the case of Peabody, Houghteling & Company v. Texas Sugar Refining Corporation, No. 48,302. Under the authority and by Order of such Court, he issued to himself during the year 1941 four Receiver's Certificates in the amount of $1500, $1000, $1250, and $500, respectively. Rhodes and wife, in making their Income Tax Return of community income for the year 1941, included all four of such Receiver's Certificates as income for that year. After paying the income tax assessed against them for that year, they filed a claim, in which each claimed a refund of $305.41 on the theory that said Certificates were not income and that they had erroneously returned them as such. Their claim was rejected, and this suit followed.

The facts are substantially as follows:

(a) The parties have filed the following Stipulation:

"Come now the parties to the above-entitled and numbered causes and agree that the following facts shall be taken as true subject; however, to the right of either party to introduce other and further evidence on the trial of this case not inconsistent with the facts herein stipulated:

"I. Plaintiffs are husband and wife and reside in Texas City in the County of Galveston, State of Texas. As such husband and wife they filed separate income tax returns for the taxable year 1941 with the Collector of Internal Revenue for the First Collection District of Texas at Austin, Travis County, Texas on or about February 13, 1942, each reporting one-half the community income and deductions on his or her separate income tax return, and each paying to the said Collector of Internal Revenue the sum of $595.20 as the amount of tax shown due on each return.

"II. In the income tax returns filed as hereinbefore shown, the plaintiffs included therein an item of $4,250.00 of 'Salaries and Other Compensation for Personal Services'.

"III. Plaintiffs kept their books and filed their returns on the cash receipts and disbursements basis.

"IV. On or about September 14, 1943 the Plaintiffs and each of them filed claims for refund, each claiming a refund in the amount of $305.41 for the year 1941 on the ground that the $4,250.00 allowed by the Court to the said E. V. Rhodes in part for personal services rendered as receiver of Texas Sugar Refining Corporation for the period 1932 to 1942, was evidenced by non-negotiable receivers certificates and cash payment therefor was not actually received until 1942, and therefore this amount was erroneously included in the 1941 income tax returns. Amended returns were filed at the same time these claims for refund were filed to reflect the true amount of tax due from each plaintiff after giving effect to this $4,250.00 adjustment. Thereafter on July 10, 1944, amended claims for refund were filed by these plaintiffs and each of them in the amount of $305.41 on the grounds that the sum of $4,250.00 allowed by the Court in part for personal services rendered as receiver of Texas Sugar Refining Corporation for the period 1932 to 1942 was evidenced by non-negotiable receivers certificates and cash payment therefor was not actually received until April of 1942. This sum was included in the 1941 income tax returns of E. V. Rhodes and wife.

"V. On January 19, 1945 the plaintiffs and each of them received a letter from William G. Cullen, Head Southwestern Division Technical Staff, stating that the taxpayers' contentions with regard to the $4,250.00 adjustment were rejected and that said $4,250.00 represented taxable income to the community for the year 1941.

This letter further stated that the statutory notices of disallowance of the claims for refund would be forwarded at a later date.

"VI. The original claims for refund and the amended claims for refund have been on file more than six months prior to the filing of this suit.

"VII. Attached hereto, made a part hereof, and marked 'Exhibit A' is copy of Order of the District Court, Galveston County, Texas, entered on February 5, 1941.

"VIII. Attached hereto, made a part hereof, and marked 'Exhibit B' is copy of Order of the District Court, Galveston County, Texas, entered on December 23, 1941.

"IX. Order of the District Court, Galveston County, Texas, entered on March 27, 1942, is attached hereto, marked 'Exhibit C' and made a part hereof.

"X. Attached hereto, marked Exhibit 'D' and made a part hereof is a statement attached to a communication addressed to the plaintiffs in which the claims for refund were denied.

"XI. Attached hereto, marked Exhibits 'E', 'F', 'G' and 'H' and made parts hereof are copies of receiver certificates issued under the order dated February 5, 1941, to E. V. Rhodes or order.

"XII. Attached hereto, marked Exhibit 'I' and made a part hereof is copy of letter dated February 5, 1944, and addressed to B. A. Wilde, Internal Revenue Agent in Charge, which letter was signed by the plaintiffs and filed with the Bureau of Internal Revenue.

"XIII. The plaintiffs have at all times borne true allegiance to the Government of the United States and have not in any way, aided, abetted, or given encouragement to rebellion against the said Government; and they are the sole owners of the claims herein sued on, and no assignment or transfer of any interest therein has been made.

"If the plaintiffs are entitled to recover herein, judgment should be rendered in the entire amounts sued for."

(b) Exhibits A, B, C, D, E, F, G, H, and I called for in such Stipulation are lengthy, and no good purpose would be served by copying them here. They are, however, referred to and made a part hereof.

(c) There was some oral evidence offered. This was largely explanatory and some of it was perhaps the witnesses' conclusions respecting the meaning or effect of the Orders, etc. of the District Court of Galveston County in such Receivership proceedings. Some of the oral evidence, however, was with respect to the value of such Receiver's Certificates at the time of and after their issuance.

(d) There was also some documentary evidence offered and marked as Exhibits, which Exhibits are referred to and made a part hereof.

(e) The evidence, including the copies of the Orders and other papers of the Receivership proceedings in the State Court, shows that about April 29, 1937, the custody of the properties of the Texas Sugar Refining Corporation was transferred from the State Court to the Bankruptcy Court of this District under a 77B Bankruptcy proceeding, and was returned to the State Court about October 29, 1938, by the dismissal of the bankruptcy proceedings. Apparently the State Court made Plaintiff Rhodes (its Receiver) an allowance of compensation up to the time the case was transferred to the Bankruptcy Court, but the four Receiver's Certificates under consideration do not cover that period. Apparently this allowance was $20,000, which was referred to and ordered paid in the Order filed March 27, 1932. This $20,000 was subsequently paid.

(f) After the case was returned to the State Court, Plaintiff Rhodes' compensation as Receiver was fixed at $250 per month, which was apparently currently paid him monthly to the extent of 24 months, or $6000. It seems clear that the four Receiver's Certificates were not issued for that period.

(g) There was a period, however, of 17 months during which Plaintiff Rhodes' compensation of $250 per month as Receiver, aggregating $4250, was not currently paid, and it was for these 17 months that the Court authorized (see Order of February 5, 1941), and Plaintiff Rhodes, as Receiver, issued these four Certificates, aggregating $4250. Such Receiver's Certificates were I think intended by the Court, the Receiver, and parties concerned to cover the allowance to Plaintiff Rhodes of the $250 per month compensation for 17 months. I think it is perfectly clear

that the $4250 ordered paid to Plaintiff Rhodes as his compensation as Receiver (and which was paid to him) in the Order of Court filed March 27, 1942, was intended to cover and pay off these four Receiver's Certificates. It is unreasonable to suppose that the Court would authorize the issuance of such Receiver's Certificates (all of which were countersigned by the Clerk of the Court) and then repudiate them and fail to take care of their payment.

(h) I am unable to accept the view that these four Receiver's Certificates, issued February 5, 1941, May 30, 1941, October 20, 1941, and December 30, 1941, considering the amount of property which secured them, were not worth their full face value when issued and thereafter. Certainly the entry of the Order for the sale of the property on December 23, 1941, made the Certificate issued seven days later, December 30, 1941, of full face value.

The finding is that the Receiver's Certificate issued February 1, 1941, for $1500, and the claim of Plaintiff Rhodes which it represented, was then and thereafter of the value of $1500, that the Receiver's Certificate issued May 30, 1941, for $1000, and the claim of Plaintiff Rhodes which it represented, was then and thereafter of the value of $1000, that the Receiver's Certificate issued October 20, 1941, for $1250, and the claim of Plaintiff Rhodes which it represented, was then and thereafter of the value of $1250, and that the Receiver's Certificate issued December 20, 1941, for $500, and the claim of Plaintiff Rhodes which it represented, was then and thereafter of the value of $500.

(i) The evidence is not at all convincing that these four Receiver's Certificates had no fair market value at and after the time they were issued. The witnesses who testified seemed in the main to give only their own ideas and estimates of their value. I think and find that they did have a fair market value, which I think was substantially, certainly not far from, their face value. It is significant that the properties of the Corporation were sold February 12, 1942, in accordance with the Court's Order of December 23, 1941, and that Plaintiff Rhodes and wife filed their Income Tax Return for 1941 on February 13, 1942, in which return these four Certificates were valued at $4250.

1. I conclude that these four Receiver's Certificates were Gross Income of Plaintiff Rhodes and wife for the year 1941, and were properly included in their Income Tax Return for that year. It is not necessary to discuss the reasoning (of which Plaintiff complains) of the Tax Authorities in reaching a similar Conclusion.

Judgment for Defendant.